ESTATE OF Carl L. CAMPBELL.

Appeal of Charlotte A. BRONNER.

ESTATE OF Carl L. CAMPBELL.

Appeal of Lucy C. CAMPBELL.

Superior Court of Pennsylvania.

Argued June 18, 1997.
Filed Aug. 28, 1997.
Reargument Denied Nov. 17, 1997.

Jeffrey C. Bortner, York, for Charlotte A. Bronner.

James P. DeAngelo, Harrisburg, for Lucy C. Campbell.

Before TAMILIA and HUDOCK, JJ., and CERCONE, President Judge Emeritus.

TAMILIA, Judge.

These are cross-appeals filed from the decree entered at the time of the October 22, 1996 Order dismissing both parties' exceptions and making final the November 10, 1992 adjudication and decree nisi disposing of the assets of the estate of Carl L. Campbell. The relevant facts have been set forth by the trial court as follows.

Carl L. Campbell [hereinafter "Decedent"] died on June 15, 1986, in Shrewsbury Township, York County, Pennsylvania. Decedent was survived by his widow, Charlotte A. Campbell, now Charlotte A. Bronner, and his daughter, Lucy C. Campbell. No Last Will and Testament for

Decedent was ever found, and no estate was opened until June 19, 1991, when Charlotte Bronner was granted Letters of Administration by the Register of Wills of York County, Pennsylvania.

. Decedent and Charlotte Bronner were married September 8, 1977, and at the time of Decedent's death on June 15, 1986, he and Charlotte Bronner resided at 18 Magnolia Circle, Shrewsbury Township, York County, Pennsylvania. Mrs. Bronner continued to reside in the marital home and remains in possession to the present time.

By an instrument designated "Quit Claim Deed," dated October 19, 1982, and recorded in the Office of the Recorder of Deeds of York County, Pennsylvania, ... Decedent conveyed the marital residence to himself as Trustee. Also on October 19, 1982, Decedent executed a Declaration of Trust wherein he declared that he held the marital residence in trust for the use and benefit of his daughter, Lucy Campbell, or, if Lucy Campbell be not surviving, for the use and benefit of his wife, Charlotte Campbell (now Charlotte Bronner)....

Approximately one year later, on October 24, 1983, Decedent executed a Deed of Trust wherein he designated himself Settlor and Lucy Campbell, his daughter, Trustee. In this instrument Decedent stated that he desired at death to leave certain property in trust in accordance with the terms of an attached "Schedule A." Decedent specifically enumerated on this Schedule A the following assets: 1) IRA [individual retirement account] Account at SECU [State Employees' Credit Union]; 2) Shares Accounts at SECU; 3) Massachusetts Investors Trust Shares at Massachusetts Services Financial Center; 4) Investment Account at Savings Bank of Baltimore, Hunt Valley Branch; and 5) Deed to 18 Magnolia Circle, Shrewsbury Township, York County, Pennsylvania.

Decedent made several provisions for his spouse, Charlotte Bronner, in the Deed of Trust as set forth in the aforementioned Schedule A. Specifically, Decedent directed as follows:

1. The remaining balance of the income from the Trust [after expenditures for property taxes, maintenance, and repairs, and for trustees fees] is to be remitted to my spouse Charlotte in a monthly rythm [sic] as the income is received as long as she remains unmarried.

2. When my spouse Charlotte receives her Social Security Pension fifty (50) percent of the income referred to above is to be paid to her as long as she remains unmarried and the remaining fifty (50) percent is to be paid to the Trustee Lucy C. Campbell.

3. If Charlotte does not choose to make 18 Magnolia Cir her home it is to be sold and twelve (12) percent of the NET PROCEEDS is to be paid to Charlotte representing her original contribution to its cost....

4. If Charlotte does remarry 18 Magnolia Cir is to be sold and twelve (12) percent of the NET PROCEEDS is to be paid to Charlotte as above and the balance added to the Trust Fund.

5. Then the Trustee Lucy C. Campbell shall pay the entire balance of the Trust Fund to herself and shall thereupon TERMINATE this Trust.

On June 19, 1991, Charlotte Bronner was granted Letters of Administration by the Register of Wills of York County, Pennsylvania. On June 19, 1991, Mrs. Bronner filed two Petitions with the Court in which she requested that the Quit Claim Deed be declared a nullity and that Lucy Campbell be directed to provide an accounting of the Decedent's assets. On July 18, 1991, Lucy Campbell filed Answers to the Petitions, asserting that the trust documents were valid and enforceable and that no accounting was required on the grounds that all of the assets were either subject to the trust or owned jointly by Decedent and Lucy Campbell with right of survivorship.

On December 13, 1991, Charlotte Bronner orally authorized her counsel, Jeffrey C. Bortner, Esquire, to act on her behalf as attorney-in-fact to file with the Court an application for extension of time in which

to file her election against Decedent's estate. Attorney Bortner signed, verified, and filed the application on December 13, 1991. The Court granted the extension of time on December 16, 1991. On December 17, 1991, Attorney Bortner filed with the Court a duplicate of the application containing Charlotte Bronner's original signature.

On or about January 27, 1992, Lucy Campbell filed with the Court a petition to vacate the Order of Court granting the extension of time.

(Slip Op., Miller, J., 11/10/92, pp. 2–5.)

On January 30, 1992, a hearing was held to dispose of both parties' claims regarding the estate. On November 10, 1992, the trial court entered its decree nisi finding the following:

1. Petitioner Charlotte A. Bronner was properly granted an extension of time in which to file her spousal election;

2. Attorney Jeffrey C. Bortner, counsel for Petitioner Charlotte A. Bronner, was duly authorized as attorney-in-fact to file an application for extension of time in which to file the spousal election;

3. The residence at 18 Magnolia Circle, Shrewsbury Township, York County, Pennsylvania; the share certificates at SECU; and the Massachusetts Investment Trust shares are property subject to the Petitioner's spousal election; notwithstanding the validity of the Quit Claim Deed and trust documents;

4. Decedent's Individual Retirement Account at SECU is not subject to the spousal election; and

5. Respondent Lucy C. Campbell, in her capacity as Trustee, is obligated to file an accounting of those assets of Decedent's in her possession and/or under her control, the accounting to be filed within sixty (60) days of this date.

Both parties thereafter filed timely exceptions, which were dismissed by the trial court in its October 22, 1996 Order making the decree nisi a final decree.

Although both parties have filed appeals from the decision of the trial court, this Opinion will focus on the initial issue raised by daughter, Lucy C. Campbell. Specifically, daughter alleges the trial court erred in allowing a spousal election five (5) years after Mr. Campbell's death where the Pennsylvania statute expressly limits the time for filing an election or a request for extension of time to a period of six (6) months.

As an appellate court, we review the findings and conclusions of the orphans' court as follows.

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.

This rule is particularly applicable 'to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.' In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*In re Estate of Inter*, 444 Pa.Super. 417, , 664 A.2d 142, 144–145 (1995) (citations omitted).

This claim revolves around the application of 20 Pa.C.S. § 2210, **Procedure for election; time limit,** which states in pertinent part:

(a) **How election made.**—A surviving spouse's election to take or not to take his elective share shall be by a writing signed by him and filed with the clerk of the orphans' court division of the county where the decedent died domiciled. Notice of the election shall be given to the decedent's personal representative, if any.

(b) **Time limit.**—The election must be filed with the clerk before the expiration of

six months after the decedent's death or before the expiration of six months after the date of probate, whichever is later. The court may extend the time for election for such period and upon such terms and conditions as the court shall deem proper under the circumstances on application of the surviving spouse filed with the clerk within the foregoing time limit. Failure to file an election in the manner and within the time limit set forth in this section shall be deemed a waiver of the right of election.

▇ Here, wife, through an attorney-in-fact, filed an application for an extension of time to take her elective share on December 17, 1991, more than five years after the death of Mr. Campbell and two days less than six months after wife was granted letters of administration by the Register of Wills, which occurred on June 19, 1991. Accordingly, the trial court, interpreting the term "probate" to include the grant of letters of administration, found that since wife filed her application "before the expiration of six months after the date of probate", *id.*, § 2210(b), it was filed in a timely manner.

We find this analysis to be flawed. Initially, we note the term "probate" is not specifically defined under Pennsylvania's Probates, Estates and Fiduciary (PEF) Code, however the term "probate" is the title of subchapter C of the PEF Code, 20 Pa.C.S. §§ 3131–3138, which subchapter deals only with wills. See *id.*, § 3131 **Place of Probate** ("The will of a decedent ... shall be probated"); id., § 3132 **Manner of probate** ("All wills shall be proved by . . ."); and *id.*, § 3133(a) **Limit of time for probate, original probate** ("A will may be offered for probate at any time.").[1] In particular, we note that the 1951 official comment to section 3131, **Limit of time for probate**, defines "original probate" as the first probate of any *testamentary writing* of the decedent. (Emphasis added.)

▇ To accept the trial court's broad definition of "probate" would be to essentially disregard the time limit specifically set forth by the legislature in subsection (b) of section 2210. Clearly, the legislative intent of section 2210 is that where a person dies

testate, the surviving spouse is required to make an election, if so chosen, within six months from the date the will is probated, i.e., the will is presented and sworn to before the Register of Wills. Logically, the will may not be located or accessible immediately upon the death of the decedent and thus the time limit should not begin until the will is formally presented to the Register for probate. On the other hand, where a decedent dies intestate, the six-month time period is still in effect, however it begins upon his death since there is no need to produce a will and decedent's assets can be distributed in conformity with the law of intestate distribution and the terms under which the decedent held the assets.

Secondly, accepting the trial court's broad interpretation of this section essentially would result in there being no time limitation in which a surviving spouse may take a spousal election when no will is presented. For example, as in the present case, the surviving spouse could wait and, at her convenience, file letters of administration at any time and thereafter be given six months to decide upon whether or not to make an election of her spousal share. Clearly, it was not the intention of the legislature to enact a statute subtitled "time limit" which in essence would have no time limit. In addition, accepting this interpretation would render the first clause of the subsection, requiring an election within six months of decedent's death, nugatory and superfluous. Moreover, while the trial court notes this expanded definition will result in no prejudice to daughter, we find the precedent set by such a broad interpretation certainly would open the door for future potential problems and prejudice to third parties.

▇ This Court also finds the trial court's reliance upon the official comment to section 2210, namely the six-month period may be waived by the court if "gross injustice could result", to also be in error. Specifically, the trial court determined wife to be "unsophisticated in business and financial matters" and no evidence was presented "she knew of her

---

1. See also P.L.E. Vol. 40, § 174 **Initial Proceeding Before Register of Wills** ("the probate procedure before the register begins with the submission of a purported will[.]").

elective rights or any limits on such a right or that she consulted an attorney[.]" (Slip Op. at 11.) Also, the court relied on her testimony that she was assured by daughter, a bank vice-president, that she would be taken care of, she did not need to worry about the matter, and daughter would advise wife as to all of the documents.

While the trial court implicitly concludes in its Opinion that wife somehow was taken advantage of by daughter to amount to a gross injustice, we find no such evidence in the record. Specifically, there is no evidence wife was so "unsophisticated" or mentally deficient that she lacked the basic knowledge to contact an attorney upon the death of her husband. Obviously, most lay people do not fully understand the legal intricacies of trusts and of an elective share, however, most persons of average intelligence know to contact an attorney to handle an estate, particularly when no will is involved. More importantly, wife has not alleged, nor is there any evidence of, fraud or misrepresentation on the part of daughter to assert her "superior knowledge" to the detriment of wife. Finally, wife has not alleged any evidence came to light in 1991 that was not available or hidden from her in 1986. Rather, the record reflects wife accepted the terms of the various trusts for more than six years and only filed her election days before her remarriage, which essentially would have cut off various benefits under the trusts (N.T., 1/30/92, p. 33).

Although we are compelled to reverse the trial court's conclusion that wife may assert a spousal election, we agree with the trial court that the trust and quit claim deed executed by decedent were valid. In a lengthy analysis, the trial court considered and rejected each of the numerous bases upon which wife sought to invalidate the trust and deed. See Slip Op. at 13–25. We have reviewed the court's analysis and agree that wife's claims must fail.

Having found the trial court erred in allowing wife to assert a spousal election, we vacate that portion of the decree. Having also found, however, that the court properly deemed valid the trust and quit claim deed executed by decedent, we affirm the remainder of the decree. Accordingly, we remand for further proceedings consistent with this Opinion, including enforcement of the trust and deed without regard to spousal election.

Decree vacated in part and affirmed in part; case remanded.

Jurisdiction relinquished.